Dear Mr. Pappalardo:
You requested the opinion of this office on several questions pertaining to office space for the Louisiana Housing Finance Agency (the "Agency").
Your first question is whether the Agency is authorized to acquire an office building? The agency's enabling legislation is found at R.S. 40:600.1, et seq. R.S. 40:600.6(15) authorizes the Agency to acquire from any person by grant, purchase or otherwise, movable or immovable property. Therefore, it is the opinion of this office that the Agency is statutorily authorized to acquire an office building.
If the Agency can purchase an office building, your second question is whether such a building would be considered state-owned space?
R.S. 40:600.3 provides that the Agency is created as a public body corporate and politic. It is a political subdivision of the state, allocated to the Department of Treasury, in accordance with the provisions of Article IV, Section 1 and Article XIV, Section 6 of the Louisiana Constitution of 1974. Statutorily then, the Agency has the attributes of both a state agency and a political subdivision.
R.S. 39:11, et seq., pertains to the administration of state lands. R.S. 39:11 specifically provides that the Commissioner of Administration is a essential party to all transactions involving immovable property in which the State has an interest and that no immovable property may be acquired, transferred, leased or encumbered without the commissioner being a party to the transaction. While there are exceptions from the provisions of R.S. 39:11, none of the exceptions applies to the Agency. Based upon the foregoing, it is the opinion of this office that any office building purchased by the Agency would be considered state owned space and subject to the provisions of R.S. 39:11, et seq.
You next ask, if the Agency acquired a building, can extra space be leased out to other State entities and/or non-state entities? R.S. 40:600.6(15) authorizes the Agency to "own, hold, clear, improve, lease, construct, or rehabilitate, and to sell, invest, assign, exchange, transfer, convey,lease, mortgage or otherwise dispose of or encumber the same, subject to the rights of holders of the bonds of the agency, at public or private sale, with or without public bidding." Thus the Agency has the authorization to lease any immovable property owned by it, with or without public bidding. As you may know, in order for a state agency to lease housing space, it is required to follow the provisions of the Procurement Code, R.S. 39:1551, et seq. Thus while the Agency could lease a building it owned without following the public bid requirements of Title 41 of the Revised Statutes (dealing with lease of state lands), another State agency may be subject to some of the provisions of the Procurement Code before it could lease space from the Agency. As to whether the Agency could lease space to non-State entities, it is questionable as to whether that type of activity is within the authorized purposes of the Agency. The Agency was created to assist in the provision ofresidential housing for those of low and moderate income, R.S. 40:600.1, not to provide commercial office space for non-State entities.
Your next question is, in order to acquire the building, would the Agency have to follow the capital outlay process? It has been the opinion of this office that the determination of whether an entity is required to comply with the capital outlay process is dependent upon whether the funds to be used to purchase the building must be appropriated. R.S. 39:112; Op.Atty.Gen. 94-140, 94-226. The Agency is a non-budgetary unit and operates solely from self-generated revenues, R.S. 40:600.5(G). It is the understanding of the undersigned that all of the Agency's monies are pledged to one or more of the Agency's revenue bonds and thus are not required to be deposited into the State treasury. ArticleVII, Section 9(A)(6) of the Louisiana Constitution. As the Agency's monies are not within the State treasury and thus no appropriation is required for their expenditure, Article III, Section 16 and Article VII, Section 10 of the Louisiana Constitution, it is not necessary for the Agency to follow the capital outlay process.
You next ask if the Agency decided to borrow the money needed to acquire the building, do they have such authorization, and is the Agency authorized to mortgage the building? The Agency has been given the power to "acquire . . . immovable property or any interest therein; to own, hold . . . sell, invest, assign, exchange, transfer, convey, lease, mortgage, or otherwise dispose of or encumber the same, subject to the rights of holders of the bonds of the agency . . ." R.S. 40:600.6(15). Thus, the Agency has the statutory authority to mortgage. Of course, any mortgage granted by the Agency can only be issued in connection with an evidence of indebtedness to meet public obligations as provided by law. Article VII, Section 14(B) of the Louisiana Constitution. As you well know, any debt of the Agency, including that issued in connection with the acquisition of a building, would need the approval of the State Bond Commission. Article VII, Section 8 of the Louisiana Constitution; R.S.40:600.14.
Your final question is if the Agency elected to lease space, rather than buy, what procedures must be followed?
The Procurement Code in R.S. 39:1641 regulates the acquisition of housing space by state agencies. This section was amended in 1988, by Act No. 919, to provide that "the provisions of this Subpart shall be applicable to all agencies meeting the definition of R.S. 39:2(1) established by the laws of Louisiana" R.S. 39:1641(D). Act 919 of 1988 also repealed the subsections of 1641(E) which had listed entities exempt from Section 1641. Section 1641(D) now provides that "[t]he definition of `agency' stated in R.S. 39:2(1) shall be the sole definition of the term `state agency' employed in connection with the acquisition of housing space in this and following Sections, and the factthat an agency is supported by fees or taxes collected by, ordedicated to, the agency or which otherwise receives itsoperating funds though means other than directappropriations, shall not be a test as to whether this Section shall be applicable to an agency of the state." R.S.39:2(1) defines "agency" to mean "any state office, department, board, commission, institution, division, officer or other person, or functional group, heretofore existing or hereafter created, that is authorized to exercise, or thatdoes exercise, any functions of the government of the state inthe executive branch . . ." It thus appears that the Agency, as a state office within the executive branch of government, is a state agency as defined in R.S. 39:2.
The undersigned is aware of the provisions in the Agency's enabling legislation which are in conflict with the provisions of R.S. 39:1641, specifically R.S. 40:600.6(A)(1) which gives the Agency specific authority to lease immovable property with or without public bidding. While it can be argued that the Agency's enabling legislation is the more specific, as opposed to the general law set forth in Title 38, it can also be argued that the latest expression of legislative will, which is the amendment to Title 39, should control. Out of an abundance of caution, it is suggested that the requirements of Title 39 governing the acquisition of housing space, be followed until such time as the conflict in the laws can be addressed by legislation. We suggest that the Agency consider having such a bill introduced in the next regular session of the legislature.
Trusting this adequately responds to your request, I remain
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _________________________ Martha S. Hess Assistant Attorney General
cc: J. Roger Magendie